**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| NTE MOBILITY PARTNERS SEGMENTS 3 LLC | § § § § § § | |
| *Plaintiff,* | § | |
| v. | § § | Civil Action No.: 4:25-cv-949 |
| ROBERT ACCETTA | § § § | |
| *Defendant.* | § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff NTE Mobility Partners Segments 3, LLC ("Plaintiff") files this Original Complaint for Declaratory and Injunctive Relief and alleges the following:

**INTRODUCTION**

1.      This case presents issues that, if left unresolved by this Court, will undermine the foundational principles governing federal accident investigations for nearly a century. The National Transportation Safety Board ("NTSB") investigates transportation accidents while also promoting industry growth.  Congress enacted a comprehensive statutory and regulatory scheme to ensure that the NTSB's investigations remain independent, unsullied by the interests of civil litigants seeking to assign blame or avoid liability.  But that is exactly the case here.

2.      Defendant Robert Accetta—a former NTSB Investigator-in-Charge—agreed to serve as a retained testifying expert witness for a plaintiff in a state civil court matter. Mr. Accetta personally directed the federal investigation into certain February 11, 2021 traffic incidents on I-35W. He intends to offer opinions, derived directly from his official work at the NTSB and the NTSB's final report, purporting to address issues of causation, fault, and industry standards. This

1

is not a mere procedural error; it is a violation of federal law and an assault on the independence, credibility, and purpose of the NTSB's investigative process.

3.      Since 1934, federal law has categorically prohibited the admission of NTSB accident reports, or any part thereof, in civil actions for damages. The statutory prohibition is not a mere technicality—it reflects decades of deliberate legislative effort aimed at ensuring NTSB reports are not used as tools for collecting damages in litigation. When the earliest predecessor of the NTSB was established in 1926, its reports were made public, causing significant concern within the aviation industry. In response, the agency ceased releasing accident reports altogether. But this secrecy also caused concerns, eroding public confidence in the airline industry. Seeking a balance, in 1934, Congress amended the Air Commerce Act to permit the public release of aviation accident investigation reports, but it explicitly "prohibited the Government's accident report or other evidence gathered from being admitted as evidence in court." Air Commerce Act of 1926, Pub. L. 73-418, 48 Stat. 1113 (1934). This exclusion was designed to protect the integrity of the agency's mission by fostering candor and cooperation in investigations, and to prevent the misuse of the agency's findings in private litigation.

4.      Congress and the NTSB repeatedly reaffirmed this policy, extending the prohibition to expert and opinion testimony by current and former NTSB employees. The statute and accompanying regulations are unequivocal: NTSB investigation reports cannot be used in a civil trial, and current *and* former NTSB personnel "shall not give any expert or opinion testimony." 49 U.S.C. § 1154(b) and 49 C.F.R. §§ 835.3–835.7. Permitting Mr. Accetta to testify as an expert eviscerates longstanding historical requirements codified by Congress from the 1930s forward. It allows a former federal official to turn the NTSB's findings and opinions against private litigants, inviting future parties to treat NTSB investigations as preludes to litigation strategy. This will

impact the willingness of parties to participate in NTSB investigators, erode the public's trust in the NTSB's impartiality, and subvert the very Congressional purpose for which the NTSB was established.

5.      The harm here is not abstract or speculative. If Mr. Accetta is permitted to testify, the proceedings in the related civil litigation will be irreparably tainted by evidence that Congress expressly prohibited. Plaintiff will be forced to defend against opinions that federal law deems improper. And importantly, it rewards a clear violation of federal law. The Court's intervention is not only warranted—it is essential to uphold federal law and protect the integrity of federal accident investigations.

## PARTIES

6.      Plaintiff NTE Mobility Partners Segments 3 is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. Plaintiff NTE Mobility Partners Segments 3 was a party to the NTSB Investigation No. HWY21FH005 pursuant to 49 C.F.R. § 831.11(a).

7.      Defendant Robert Accetta is a natural person with an established domicile at 2607 Cove Drive, Grand Prairie, Texas. Mr. Accetta is therefore a citizen of Texas. He may be served with process at his address or any other location where he may be found.

## JURISDICTION AND VENUE

8.      Subject matter jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff's claims arise under the federal statutes and regulations that govern NTSB investigations. Plaintiff NTE Mobility Partners Segments 3 was admitted as a "party" to Investigation No. HWY21FH005 pursuant to 49 C.F.R. § 831.11(a), a status that confers enforceable rights and responsibilities, as

3

more fully set forth in 49 U.S.C. § 1154(b) and the accompanying regulations in 49 C.F.R. § 835. This statutory and regulatory scheme was enacted, at least in part, to ensure that parties to an NTSB investigation are shielded from the very harms set forth here—namely, the use of NTSB reports or NTSB personnel opinions in private civil litigation. Accordingly, Plaintiff falls squarely within the zone of interests the statutory scheme was designed to safeguard. Because the controversy arises under federal law, this Court may exercise federal-question jurisdiction to declare and enforce Plaintiff's federally protected rights.

9.      This Court also possesses subject-matter jurisdiction under 28 U.S.C. § 1331 because the gravamen of this action turns on the interpretation and enforcement of federal statutes and regulations that fully and expressly govern the admissibility of NTSB accident reports and the permissible scope of testimony by current and former NTSB employees. *See* 49 U.S.C. § 1154(b) and 49 C.F.R. §§ 835.3–835.7. The underlying state claims in the Related Litigation (as defined below) are brought under the Texas wrongful death statute, and Plaintiff seeks declaratory and injunctive relief to prevent Defendant from offering expert or opinion testimony in the Related Litigation that is prohibited by these federal provisions. Resolving Plaintiff's claims therefore requires the Court to decide embedded, disputed questions of federal law are that are dispositive of the relief sought and indispensable to the adjudication of the parties' rights in the underlying wrongful-death actions pending in state court. The federal interest in maintaining the uniformity and integrity of the NTSB's statutory scheme is paramount, and the risk of inconsistent or erroneous state-court interpretations of these federal requirements is substantial. Because the resolution of those federal questions will determine whether the plaintiffs in the Related Litigation may rely on Defendant's proposed testimony—and thus directly affect the course and outcome of

4

those wrongful-death claims—this action "arises under" federal law within the meaning of § 1331, conferring original jurisdiction on this Court.

10.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201.

11.     Venue is proper in this Court pursuant to 42 U.S.C. § 1391 because Defendant Robert Accetta resides in this district.

12.     The Court has personal jurisdiction over the Defendant because he is a Texas resident.

## FACTUAL BACKGROUND

13.     On February 11, 2021, a multivehicle incident occurred in the southbound toll lanes of Interstate 35 West in Fort Worth, Texas. This ultimately resulted in numerous personal-injury lawsuits being filed, which have since been consolidated into a Texas state MDL in Fort Worth. Notably, one of the cases in the MDL action is set to be returned from the MDL and proceed to trial in Dallas County District Court in December 2025 (the "Related Litigation").

14.     In response to the incident, the NTSB, an independent federal agency responsible for investigating transportation accidents, launched an investigation. Defendant Robert Accetta, then an NTSB employee, led the investigation as the Investigator-in-Charge, thereby shaping the direction and findings of the investigation. Plaintiff was made a party to the investigation under 49 U.S.C. § 831.11(a).

15.     In 2023, the NTSB adopted a Final Report containing its analysis, findings, and probable-cause determination.

16.     On July 14, 2025, plaintiffs in the Related Litigation designated Mr. Accetta as a testifying expert. In their designation, plaintiffs stated that Mr. Accetta is "expected to testify about

the NTSB investigation into the February 11, 2021 IH-35W crash," including topics such as "roadway management, winter weather preparation, hazard communication, signage, and *causation* of the pileup." (emphasis added). Plaintiffs in the Related Litigation further asserted that Mr. Accetta's opinions are based on his "firsthand investigation," as well as "reports and findings published in NTSB Report HWY21FH005."

17.     On the same day, plaintiffs in the Related Litigation disclosed the expert report of Mr. Accetta. In the report, Mr. Accetta states that he was the Investigator-in-Charge for the crash on I-35 and "personally supervised and coordinated the documentation and analysis of weather conditions, roadway design and treatment, crash dynamics, and response protocols." In the report, Mr. Accetta also states, among other things, that it his professional opinion that "untreated ice" was a direct and primary causal factors of the crash; that "[t]he failure to apply supplemental de-icing measures . . . constituted a deviation from industry-accepted maintenance practices;" the toll road operator "failed to adequately monitor and respond to deteriorating pavement conditions[] in violation of standard operating procedures and reasonable safety expectations;" that the "Fort Worth I-35W pileup was preventable" and that "these failures represent a significant breach of the duty of care owed to motorists."

18.     Expert discovery in the Related Litigation is scheduled to close in October, and with trial set to begin on December 1, 2025, plaintiffs in the Related Litigation are actively preparing to offer Mr. Accetta's opinions.

19.     Federal law and regulations unequivocally and categorically prohibit plaintiffs in the Related Litigation from using Mr. Accetta—a retired NTSB employee who served as the Investigator-in-Charge of the relevant accident—as an expert witness.

20.    Section 701(e) of the Federal Aviation Act of 1958 and Section 304(c) of the Independent Safety Board Act of 1974, now codified at 49 U.S.C. § 1154(b), prohibit the admission into evidence of any NTSB accident report "or any part thereof" in a civil action for damages.

21.    Indeed, the very report explains these prohibitions as advancing the purpose of the statute behind a backdrop of a long history:

> The National Transportation Safety Board (NTSB) is an independent federal agency dedicated to promoting aviation, railroad, highway, marine, and pipeline safety. Established in 1967, the agency is mandated by Congress through the Independent Safety Board Act of 1974, to investigate transportation accidents, determine the probable causes of the accidents, issue safety recommendations, study transportation safety issues, and evaluate the safety effectiveness of government agencies involved in transportation. The NTSB makes public its actions and decisions through accident reports, safety studies, special investigation reports, safety recommendations, and statistical reviews.
>
> The NTSB does not assign fault or blame for an accident or incident; rather, as specified by NTSB regulation, "accident/incident investigations are fact-finding proceedings with no formal issues and no adverse parties … and are not conducted for the purpose of determining the rights or liabilities of any person" (Title 49 *Code of Federal Regulations* section 831.4). Assignment of fault or legal liability is not relevant to the NTSB's statutory mission to improve transportation safety by investigating accidents and incidents and issuing safety recommendations. In addition, statutory language prohibits the admission into evidence or use of any part of an NTSB report related to an accident in a civil action for damages resulting from a matter mentioned in the report (Title 49 *United States Code* section 1154(b)).

22.    The regulations promulgated under this statute expressly prohibit former NTSB employees from testifying as an expert witness in litigation. Under 49 C.F.R. § 835.7, which governs the testimony of former NTSB employees, the scope of permissible testimony is rigidly constrained by all the limitations set forth in § 835.3 and § 835.4. Critically, under § 835.3(b), NTSB employees "**shall not give any expert or opinion testimony**." *Id.* § 835.3(b) (emphasis added). Furthermore, § 835.3(a) mandates that **"[l]itigants must obtain their expert witnesses from other sources**." *Id.* § 835.3(a) (emphasis added).

23.    These statutory and regulatory exclusions of both NTSB accident reports and expert or opinion testimony from NTSB employees operate in tandem, reflecting a complete and unified legislative and administrative intent to prevent the use of the NTSB's investigative findings

or the specialized opinions of its personnel and former personnel as evidence in civil litigation. By excluding both the reports themselves and any expert testimony from NTSB employees, Congress and the NTSB ensured that the fact-finding and safety-focused mission of the NTSB remains independent and shielded from the adversarial process of civil litigation. *See id*. § 835.3(a).

24.     Moreover, the NTSB expressly rejected the notion that its employees may act as expert witnesses. As the NTSB explained in its Notice of Proposed Rulemaking in 1990 when § 835.3 was amended, the revision was intended to "preclude an interpretation of § 835.3 which would permit employees to testify as experts or give any opinion testimony." 55 Fed. Reg. 30941, 30942 (July 30, 1990).  The Board explained that permitting such testimony "would in effect be taking sides in the litigation," thereby undermining the NTSB's neutrality and the public's confidence in the objectivity of its investigative process.  *Id*. Consistent with this rationale, § 835.1 enumerates the foundational purposes of the regulations: "to ensure that the time of Board employees is used only for official purposes, to avoid embroiling the Board in controversial issues that are not related to its duties, to avoid spending public funds for non-Board purposes, to preserve the impartiality of the Board, and to prohibit the discovery of opinion testimony." 49 C.F.R. § 835.1.

25.     Allowing a former Investigator-in-Charge to serve as an expert witness on the very investigation he directed eviscerates the statute and regulations' text and purpose, erodes public confidence in the NTSB's independence and federal statutory scheme, and permits former officials to be repurposed as litigation tools. And these consequences would inevitably chill the willingness of future parties to cooperate fully with NTSB investigations.

26.     Mr. Accetta's proposed testimony directly contravenes these federal mandates. The use of his report and his expert opinion is expressly barred by §§ 1154(b), 835.3, and 835.7.

Consistent and uniform enforcement of 49 U.S.C. § 1154(b) and its accompanying regulations is a critical federal interest, and permitting inconsistent state-court practices seriously undermines the statutory scheme and very purpose of the NTSB. Federal intervention is therefore essential to safeguard the integrity and neutrality of the federal investigative process.

27.    Unless enjoined, Mr. Accetta's testimony will irreparably harm Plaintiff by unfairly prejudicing Plaintiff in the Related Litigation and requiring it to defend against improper expert opinions that federal law forbids, which in turn undermines the uniform federal statutory scheme governing accident investigations.

## REQUEST FOR RELIEF

### COUNT 1
### DECLARATORY JUDGMENT CLAIM FOR BREACH OF FEDERAL STATUTE

28.    All foregoing allegations are repeated and realleged as if fully set forth herein.

29.    An actual, ripe, and justiciable controversy exists between Plaintiff and Mr. Accetta regarding his current breach of, and announced intention to continue to violate, federal law. The Court's declaration will confer certainty on the parties and serve the interests of justice.

30.    Plaintiff contends that:

    a.    Defendant's offered expert opinions are inextricably linked to the NTSB's own conclusions, which are prohibited by § 1154(b).

    b.    Defendant's offered expert opinions are barred by 49 C.F.R. §§ 835.3 and 835.7

31.    Plaintiff seeks a declaratory judgment that permitting such testimony would violate federal law and that Accetta is enjoined from offering it.

### COUNT 2
### REQUEST FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF REGARDING BREACH OF FEDERAL STATUE

32.    All foregoing allegations are repeated and realleged as if fully set forth herein.

9

33.    Plaintiff seeks a temporary restraining order ("TRO") restraining Mr. Accetta from producing expert reports, testifying, or otherwise offering opinion evidence concerning NTSB Investigation HWY21FH005 pending a hearing on a preliminary injunction for violation of federal law.

34.    A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief[] and requires the party seeking such relief to establish the same four elements for obtaining a preliminary injunction." *Johnson v. Equifax Info. Services LLC*, No. 3:24-CV-2899-D, 2024 WL 5656589, at *1 (N.D. Tex. Dec. 26, 2024) (internal quotations omitted). Therefore, a party seeking a TRO must establish four elements to prevail: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm to him if the TRO is not granted, (3) that the threatened harm outweighs any damage that the TRO might cause the opposing parties, and (4) that the TRO will not disserve the public interest. *Id.*

35.    *Likelihood of success*. <u>First</u>, Plaintiff is likely to succeed because use of Mr. Accetta's report and his expert opinion is expressly barred by §§ 1154(b), 835.3, and 835.7. The statutory and regulatory text is unequivocal; Mr. Accetta's stated opinions are precisely what the regulations forbid. Courts consistently enforce this regulation to maintain the integrity and neutrality of NTSB investigations, further supporting Plaintiff's likelihood of success on the merits.

36.    *Irreparable harm*. <u>Second</u>, Plaintiff will suffer irreparable harm without prejudice. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Once the testimony is given, the bell cannot be unrung. If Mr. Accetta is permitted to testify in contravention of these statutory bars, the Related Litigation would be fundamentally compromised, as the jury likely would be

improperly influenced by opinions and conclusions that federal law deems inadmissible, and irreparable harm to the federal statutory scheme, Congress's intent, and the public trust would occur simply by allowing the testimony at all.

37.    *Balance of hardships*. Third, the balance of hardships tips in Plaintiff's favor. In considering the balance of hardships, the district court must "balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted." *M-I LLC v. FPUSA, LLC*, No. SA:15-CV-406-DAE, 2015 WL 6738823, at *13 (W.D. Tex. Nov. 4, 2015) (internal quotations omitted). In contrast to the hardships Plaintiff will face if the TRO is denied, issuing the TRO will merely require Mr. Accetta to obey federal law.  Mr. Accetta will not be deprived of any substantive rights.

38.    *Public interest*. Fourth, a TRO is in the public interest. Enforcement of federal statutes and preservation of the NTSB's neutrality serve the public interest as continually expressed by Congress since the 1930s.

## ATTORNEYS' FEES

39.    All foregoing allegations are repeated and realleged as if fully set forth herein.

40.    Plaintiff has been required to employ the undersigned attorneys to represent it and prosecute this action. Accordingly, Plaintiff seeks reimbursement of its reasonable and necessary attorneys' fees from Defendant.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court:

   a. Issue a temporary restraining order restraining Mr. Accetta from relying on, or
      otherwise referencing his expert report, testifying, or offering any opinion evidence

concerning NTSB Investigation HWY21FH005 pending a hearing on preliminary injunction;

b.  After hearing, issue a preliminary and permanent injunction enjoining Mr. Accetta from violating 49 U.S.C. § 1154(b), 49 C.F.R. §§ 835.3–835.7;

c.  Declare, under 28 U.S.C. § 2201, that Mr. Accetta's testimony constitutes prohibited expert or opinion testimony derived from his official NTSB duties and reliance on the NTSB Final Report; Mr. Accetta's expert opinions are inextricably linked to the NTSB Board's own conclusions, which are prohibited by § 1154(b); and Mr. Accetta's expert opinions are barred by 49 C.F.R. §§ 835.3 and 835.7;

d.  Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

e.  Award costs and such other relief as justice requires.

Dated: September 2, 2025                              Respectfully submitted,

                                                     **WINSTON & STRAWN LLP**

                                                     */s/      Scott Thomas*
                                                     Scott Thomas
                                                     Texas Bar No. 24046964
                                                     SCThomas@winston.com
                                                     Brooke C. Wilson
                                                     Texas Bar No. 24128027
                                                     Brwilson@winston.com
                                                     Emily Wilkinson
                                                     Texas Bar No. 24125457
                                                     ewilkinson@winston.com
                                                     **WINSTON & STRAWN LLP**
                                                     2121 N. Pearl St., Suite 900
                                                     Dallas, TX 75201

12

Telephone: (214) 453-6500
Fax: (214) 453-6400

J. Laurens Wilkes
Texas Bar No. 24053548
JLWilkes@winston.com
**WINSTON & STRAWN LLP**
800 Capitol St., Suite 2400
Houston, TX  77002
Telephone: (713) 651-2600
Fax: (713) 651-2700

**COUNSEL FOR PLAINTIFF
NTE MOBILITY PARTNERS
SEGMENTS 3 LLC**